HEARD NOVEMBER TERM, 1874.

DEWITT *vs.* ATKINSON.

In equity causes the Supreme Court will the more readily reverse the decree of the Circuit Judge upon a question of fact where he differs from a Referee who heard the witnesses, than in other cases.

BEFORE TOWNSEND, J., AT DARLINGTON,                TERM, 1873.

This was a bill in equity by Nancy F. Dewitt, administratrix, and heir at law of Samuel B. Dewitt, deceased, and others, heirs at law of the intestate, against Margaret Atkinson and others, heirs at law, and Erasmus G. Kirven, administrator *de bonis non* of William H. Atkinson, deceased, for specific performance of a contract for the sale of land.

The case was as follows: On the 23d day of September, 1859, the two decedents made a contract for the sale of a tract of land by Dewitt to Atkinson. Atkinson gave to Dewitt his sealed note for $1,150, bearing that date, and payable, with interest, on the 1st. January, 1862, and Dewitt gave to Atkinson his bond, bearing the same date, to make titles to the land when the note should be paid. Atkinson died on 6th January, 1863, and Dewitt died in June, 1864. The defense was payment— the defendants contending that, some payments having been made on the note, and Dewitt being liable to ·Confederate service, he agreed with Atkinson that he, Atkinson, should take his place in the service, and that upon his being received as his substitute the balance of the note should be regarded as paid.

On the 24th July, 1862, Atkinson left his home to enter the Confederate service as a substitute for Dewitt. He was received and

served as such substitute until his death. Before leaving for the army he executed his will, bearing date the 19th July, 1862, and thereby devised a tract of land to his two sons on condition that they assist in paying for the land he had purchased from Dewitt.

The cause was referred to E. A. Law, Esq., "to hear and determine the issues of law and of fact raised in the case." A number of witnesses were examined on both sides upon the question whether the agreement between Dewitt and Atkinson was that the acceptance of the latter as Dewitt's substitute in the army was to operate as satisfaction of the note given for the land.

The Referee examined the evidence at length, and reported as his conclusion of fact that no such agreement as that alleged by defendants was made by Dewitt and Atkinson, and therefore that the note was unpaid.

The defendants excepted to the report on the ground that the finding of the Referee was clearly against the weight of the evidence.

His Honor the presiding Judge also reviewed the evidence at length, and came to the conclusion that it established the existence of the agreement alleged by defendants. He therefore overruled the report of the Referee, and decreed that the note of Atkinson be delivered up to be cancelled, and that the Clerk of the Court do execute a conveyance of the land to the heirs at law of Atkinson.

The plaintiffs appealed.

*Edwards*, for appellants.

*Spain*, contra.

April 20, 1875. The opinion of the Court was delivered by

WRIGHT, A. J. The single question in the case is one of fact. Did Dewitt agree with Atkinson that upon the acceptance of the latter as his substitute in the Confederate army the note of Atkinson, held by him, should be discharged?

The Referee, to whom the issues were referred, after a full examination of the testimony, which he reported at length, filed his conclusions in favor of the plaintiffs. On exceptions by the defendants, his finding of fact was reversed by the presiding Judge, by a decree, in which the evidence is elaborately considered. Before presenting our views on the question of fact involved, it may be proper, lest

silence may lead to misapprehension, to say that the third exception to the report was not well taken.

We do not understand that the report, in weighing the relative strength of the testimony, failed to give whatever effect was due to that offered by the respondent, upon the ground that it was not admissible to contradict or alter a written contract by parol. On the contrary, while accepting the evidence with the view of showing that the note was discharged, he did not consider it of sufficient force for the purpose for which it was introduced. If the testimony from which the presiding Judge drew his conclusion had been heard by him *viva voce*, his decree on the facts would be in the nature of a verdict by a jury, with which we would not interfere, unless it was a manifest departure from the only result to which a proper estimate of the evidence could lead. When, however, from not having seen the witnesses, their manner on the stand, and thus deprived of the opportunity of judging of their relative intelligence, and obliged to draw his opinion from the evidence as reported by the Referee, he has enjoyed no better opportunity of deciding on the facts in issue than we possess, obtaining our knowledge from the same source. If the evidence heard by the Chancellor involved much doubt, "that," as was said in *Lord* vs. *Lowry & Fagortie*, (Bail. Eq., 514,) "furnishes, perhaps, the best reason why this Court should not review the Chancellor's determination of it."

But the same rule does not obtain where the testimony is altogether in writing, for, the reason of it ceasing, the rule itself must cease.—*Green and Wife* vs. *Hicks*, Bail. Eq., 20.

Therefore it is said in the same case : "So where the Commissioner examines the witnesses, his decision on the facts should be generally adopted by the Chancellor; but he has the right to examine and correct the conclusions of the Commissioner where he thinks they are incorrect. In such cases of difference of opinion between the Chancellor and the Commissioner, upon the fact, this Court is bound to examine the Chancellor's decree, and either adopt or reject it, as the facts may appear to warrant."

As we have said in other cases, it is not our purpose, in expressing the conclusions which we reach on issues of fact, to enter into any discussion at large of all the evidence introduced, or to take up the testimony of every witness on the one side and compare it with that introduced on the other side to rebut it. We look at it as a whole, and justify our conclusion by the influence which its entire scope makes on our minds.

The note was proved.  To discharge it, the *onus* was on the re-
spondents to prove the contract between Dewitt and Atkinson,
through which, they averred, it had been satisfied.  If the testimony
offered to that end failed to accomplish it, and left the terms of the
alleged agreement between the parties doubtful, the fact on which
the defense relies was not established.

It is not sufficient, in the language of the decree, that "the pre-
ponderance of evidence in the case is decidedly in favor of the
defendants."  The agreement relied on to operate as payment must
be established by proof.  If the testimony leaves it doubtful, then
it has failed in its purpose.  If the evidence had left the execution
of the note by Atkinson doubtful, it could not have been set up
against his estate; so, on the other hand, if the evidence offered in
favor of its discharge left the conclusion doubtful, it cannot be said
to have been made out.  That it required an explanation to aid
every circumstance adduced on the part of the defense by assump-
tions not always properly inferable, is at least indicative of the fail-
ure of the testimony offered to lead to a direct and positive judg-
ment.  The provision in regard to the land, for which the note was
given, in the will of Atkinson, executed but five days before he left
to enter the service, and after he had agreed to go as a substitute
for Dewitt, is so inconsistent with the character of the contract set
up by the defense that it is almost sufficient of itself to counteract
the effect of the testimony which is offered to sustain it.  The ex-
planation that the contract was only to have force from the time
when he might be accepted as a substitute does not at all modify
the impression which it forces upon us.  No man of ordinary pru-
dence, under the same circumstances, about entering an army then
engaged in a bitter war, executing the most solemn instrument by
which he can dispose of his worldly estate, would have so referred
to the land which, on his acceptance into the service which he was
about to enter, was to vest absolutely in him by purchase.  He not
only refers to it as still unpaid for, but directs the mode through
which he desires the payment for it to be made.  He does not even
allude in any shape or form to the contract, on the performance of
which, as the defense asserts, his title was to depend.  The will was
executed and proved in due form of law, and it does not lie in the
mouth of those who take under it to say that he signed it without
a full knowledge of its contents.  As the Referee says, " the infer-
ence to be drawn, from the execution of the will, is greatly strength-

ened and fortified by his repeated declarations after he had joined the army." The settlement, too, on the 13th September, 1866, between the administrator *de bonis non* of Atkinson and the administratrix of Dewitt, with a knowledge on both sides that the legatees of Atkinson claimed that the note had been paid by the contract under which he entered the service as the substitute of Dewitt, strongly confirms the conclusion which the Referee has reached, and in which, from the whole scope of the testimony, we feel bound to concur.

The motion is granted, the order of the Circuit Judge set aside, and the case remanded to the Circuit Court for such orders as may be necessary to carry out our judgment as herein expressed.

*Moses,* C. J., and *Willard,* A. J., concurred.